In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00720-CV

____________


LEROY HAYES, JR., Appellant


V.


WELLS FARGO BANK, N.A., Appellee






On Appeal from the 280th District Court 

Harris County, Texas

Trial Court Cause No. 2005-43586 






MEMORANDUM OPINION

 Appellant, Leroy Hayes, Jr., pro se, appeals a take-nothing judgment
rendered in favor of appellee, Wells Fargo Bank, N.A. (the bank) after a bench
trial. The judgment awarded the amount of principal and interest on a promissory
note acknowledging Hayes's indebtedness to the bank and also awarded the bank
attorney's fees. We construe Hayes's issues on appeal as follows: (1) Hayes
challenges (a) the trial court's interpretation of the note and (b) the sufficiency of
the evidence to support the trial court's implied findings, (2) Hayes contends he
was entitled to a mistrial because the bank did not respond to discovery requested
during the week before trial, and (3) Hayes contends that the trial court abused its
discretion by (a) denying Hayes's request for a jury trial, (b) excusing a witness
that Hayes had subpoenaed, and (c) applying the rule of sequestration. We affirm. 

Background

 Prime Bank (later purchased by Wells Fargo) loaned $100,000 to Hayes for
"working capital" for his business. On February 11, 2000, Hayes signed a
"Commercial Fixed Rate Promissory Note" by which he promised to repay all
principal plus interest at the rate of 9%, with total interest charges of $24,546.20.
The note was payable "[o]n demand, but if no demand is made, then" in 59
payments of $1,608.91 each, with a final payment, "due and payable" on February
11, 2005 for "the unpaid balance plus accrued interest." The note recites Hayes's
promise to pay "until all amounts owing under this note are paid in full." Hayes
was authorized to prepay the note, in part or in full, on or before the maturity date
without penalty.

 Hayes's lawsuit disputes the last, or 60th payment, due on February 11,
2006. Though his live pleadings acknowledge the terms stated above, Hayes
alleged (1) that his "understanding and intentions," when he executed the note,
were that his loan would be paid "in full" by February 11, 2006, (2) that he did not
know that the last payment due would be a "balloon payment," and (3) that he
should not be required to "pay an additional . . . $14,235.52 in interest as
prescribed by the written contract." (1) Hayes sought attorney's fees, interest, and
costs, but did not assert a claim for damages. 

 The bank filed a general denial and a counterclaim asserting that Hayes still
owed $35,272.31 on the note, in addition to attorney's fees and costs. The bank
also filed a motion for judgment on the day before trial began.

 After a two-day trial, the trial court rendered judgment that Hayes take
nothing on his claim, and that Wells Fargo was entitled to "recover on its modified
counterclaim" and also entitled to interest, costs, and attorney's fees for trial and
contingent attorney's fees for appeal. The trial court did not file findings of fact
and conclusions of law, and Hayes did not request them. Hayes timely filed a
letter requesting a new trial, which the trial court denied after an oral hearing. 

Standard of Review


 Because we have no findings of fact and conclusions of law by the trial
court, we infer all findings necessary to support the judgment. See BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990). It is axiomatic that any implied finding be
consistent with the judgment. Anderson Mill Mun. Util. Dist. v. Robbins, No. 03-04-00369-CV, 2005 WL 2170355, at *6 (Tex. App.--Austin, Sept. 8, 2005, no
pet.). We presume that the trial court found all questions of fact in support of the
judgment, and we affirm if the judgment can be upheld on any legal basis
supported by the pleadings and the evidence. See Point Lookout W., Inc. v.
Whorton, 742 S.W.2d 277, 278 (Tex. 1987); Worford, 801 S.W.2d at 109. When
the record includes a reporter's record of the trial, as here, the appealing party must
show that the judgment of the court below cannot be sustained by any theory raised
by the evidence. See Whorton, 742 S.W.2d at 278. 

A. Contract-Interpretation Challenges

 Two of Hayes's issues challenge the trial court's interpretation of the loan
documents and note. The well-settled rules of contract interpretation apply to
promissory notes. See EMC Mortgage Corp. v. Davis, 167 S.W.3d 406, 413 (Tex.
App.--Austin 2005, pet. ref'd). The court's first priority is to determine the intent
of the parties as expressed in the instrument. DeWitt County Elec. Coop., Inc. v.
Parks, 1 S.W.3d 96, 100 (Tex. 1999); EMC Mortgage Corp., 167 S.W.3d at 413
(citing J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Nat'l
Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995)). In
determining the parties' intent, courts must consider the entire writing and give
effect to all provisions of the contract within the context of the entire agreement so
that no provision is either rendered meaningless or given dispositive effect in
isolation. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); EMC Mortgage
Corp., 167 S.W.3d at 413. If this analysis permits a certain or definite legal
meaning or interpretation, then there is no ambiguity, and the court will construe
the contract as a matter of law. Lopez v. Munoz, Hockema & Reed, L.L.P., 22
S.W.3d 857, 861 (Tex. 2000); Coker, 650 S.W.2d at 393; EMC Mortgage Corp.,
167 S.W.3d at 413. A contract is ambiguous only when it is reasonably susceptible
to more than one meaning. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003). Whether a contract is ambiguous is a question of law for the
court. Coker, 650 S.W.2d at 393; EMC Mortgage Corp., 167 S.W.3d at 413. 
Extraneous evidence concerning the parties' interpretations is admissible only if
the court first determines that the contract is ambiguous. National Union, 907
S.W.2d at 520; EMC Mortgage Corp., 167 S.W.3d at 413. 

 In this case, the trial court's judgment recites that Hayes "have and recover
nothing" from the bank on his claims. This judgment implies that the trial court
rejected Hayes's claims (1) that he expected and intended, in executing the note,
that his loan would be paid "in full" by February 11, 2005 after paying $1,608.91
per month, (2) that he did not know that the last payment due would be "balloon
payment," and (3) that he should not be required to "pay an additional . . .
$14,235.52 in interest as prescribed by the written contract." 

 The face of the note defeats Hayes's first contention because paying
$1,608.91 for 60 months would repay only $96,534.60 against an undisputed
$100,000 indebtedness. By rendering judgment against Hayes, the trial court
impliedly rejected this claim and Hayes's remaining claims. An agreement with a
balloon-payment provision generally calls for regular, equal payments that consist
mostly of interest and smaller amounts of principal, with a large, final payment of
all remaining principal plus any accrued interest, which fully satisfies the
borrower's financial obligations to the lender. See EMC Mortgage Corp., 167
S.W.3d at 414 (citing Parker v. Dodge, 98 S.W.3d 297, 299 (Tex. App.--Houston
[1st Dist.] 2003, no pet.); Katy Pers. Storage v. First State Bank, 968 S.W.2d 579,
580 (Tex. App.--Houston [14th Dist.] 1998, pet. withdrawn)). Because the note
and accompanying documents in this case meet these criteria, the trial court
properly concluded, as a matter of law, that the note unequivocally required a 60th,
balloon payment of unpaid principal plus interest. The trial court's stating on the
record that the bank did not "adequately impress" upon Hayes the nature of the
balloon payment neither changes this result nor compels a different interpretation
of the note. 

 The record here shows that Hayes realized, from his own calculations, that a
balloon payment was due and complained to the bank. In response to Hayes's
complaints, the bank loaned him additional funds at a lower interest rate to enable
him to pay off his balance. As the trial court recognized, Hayes was "absolutely"
not adversely affected even if he did not initially understand that he had signed a
loan committing him to a balloon payment. 

 Hayes counters that the bank violated the disclosure requirements of 12
C.F.R. Part 226 (Regulation Z), adopted under the Federal Truth in Lending Act,
15 U.S.C. § 1601 et seq., because the bank did not disclose that the loan transaction
required a balloon payment. As reflected in the enactment of chapter 348 of the
Finance Code, which governs installment sales of motor vehicles, Regulation Z
applies to "retail installment transactions." See Tex. Fin. Code Ann. § 348.009(a)
(Vernon 2006) (emphasis added); see also 12 C.F.R. Part 226.1(b) (stating that
Regulation Z serves to "promote informed use of consumer credit" by requiring
full disclosure of terms and costs) (emphasis added). Hayes's note shows on its
face that it is a commercial, fixed rate promissory note. It is undisputed that Hayes
borrowed the $100,000 as working capital for his business and thus for a
commercial, rather than a retail, purpose. As the trial court recognized, Regulation
Z does not apply to this commercial transaction. See Tex. Fin. Code Ann. §
348.009(a); 12 C.F.R. Part 226.1. 

 Hayes also argues that a bank officer made a "human error" in calculating
amortization of Hayes's $100,000 loan because his monthly payments should have
amounted to $2,076.00, instead of $1,608.91 monthly, in order to amortize the
$100,000 indebtedness over 60 months. But, Hayes's proposed amortization
would change the basic character of his note from a loan transaction that requires a
final balloon payment "of the unpaid principal balance plus accrued interest," to a
loan transaction with equal monthly payments of both principal and interest and a
final payment equal to all preceding monthly payments. Hayes's recalculation
would require that the balloon payment terms of his note be disregarded as
meaningless and thus contravene the settled rule of interpretation, that all terms of
the note must be construed together, with none rendered meaningless. See Coker,
650 S.W.2d at 393. Hayes's proposed amortization would also render the terms of
the note ambiguous--by requiring a final balloon payment while negating any final
balloon payment. See EMC Mortgage Corp., 176 S.W.3d at 414 (holding that note
requiring both a final balloon payment and equal monthly payments of principal
and interest was internally inconsistent and therefore ambiguous). 

 Hayes's last challenge to the loan is premised on claims that the trial court
erred in applying the parol evidence rule. This is a rule of substantive law. 
Hubacek v. Ennis State Bank, 317 S.W.2d 30, 32 (Tex. 1958); Gonzalez v. United
Bhd. of Carpenters & Joiners, 93 S.W.3d 208, 211 (Tex. App.--Houston [14th
Dist.] 2002, no pet.) When parties reduce an agreement to writing, the law of parol
evidence presumes, in the absence of fraud, accident, or mistake, that prior or
contemporaneous agreements, whether oral or written, are merged into the final,
written agreement and, therefore, that any provisions not set out in the writing were
either abandoned before execution of the agreement or, alternatively, were never
made and are thus excluded from consideration in interpreting the written
agreement. See Hubacek, 317 S.W.2d at 32; Smith v. Smith, 794 S.W.2d 823, 827
(Tex. App.--Dallas 1990, no writ); Muhm v. Davies, 580 S.W.2d 98, 101 (Tex.
Civ. App.--Houston [1st Dist.] 1979, writ ref'd n.r.e.).

 Hayes argues that application of the parol evidence rule favors him. He
contends that the balloon payment is not disclosed in the note and, therefore, no
balloon payment is required, because "proper application" of the parol evidence
rule precludes any testimony by the bank's witnesses concerning oral statements
regarding a balloon payment. As addressed above, the trial court could properly
have concluded as a matter of law and from the face of the note alone, that the loan
transaction required a balloon payment. Hayes has not demonstrated with citations
to the record that the trial court improperly considered parol evidence, and nothing
in the record supports his contention. 

 We overrule Hayes's issues (a), (b), and (c).

B. Challenges to the Factual Sufficiency of the Evidence

 Hayes's issue (f) challenges the sufficiency of the evidence to support the
take-nothing judgment. A request for findings of fact and conclusions of law is not
required to question the sufficiency of the evidence. Pruet v. Coastal States
Trading, Inc., 715 S.W.2d 702, 704 (Tex. App.--Houston [1st Dist.] 1986, no
writ). Accordingly, Hayes may challenge the trial court's implied findings for
legal and factual sufficiency, under the same standards that govern challenges to a
jury's findings. See BMC Software, 83 S.W.3d at 795. Hayes does not argue that
he proved his claims as a matter of law or that no evidence supports the judgment
in favor of the bank, but contends that the trial court improperly resolved in the
bank's favor what Hayes contends are lies and inconsistencies by the bank's
witnesses. Accordingly, we construe his arguments as contending that the great
weight and preponderance of the evidence to support the trial court's implied
findings in favor of the bank and thus, as asserting a challenge to the factual
sufficiency of the evidence.

 In assessing a factual sufficiency challenge, we weigh all the evidence, both
supporting and conflicting, and may set the finding aside only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951); Comm'n of Contracts v. Arriba Ltd., 882 S.W.2d
576, 582 (Tex. App.--Houston [1st Dist.] 1994, no writ). In an appeal from a
bench trial, we may not invade the fact-finding role of the trial court, who is the
sole judge of the credibility of the witnesses and the weight to give their testimony,
and alone determines whether to accept or reject all or any part of that testimony. 
Nordstrom v. Nordstrom, 965 S.W.2d 575, 580-81 (Tex. App.--Houston [1st
Dist.] 1997, pet. denied).

 Hayes's basic premise appears to be that the bank mistakenly loaned him the
$100,000 through a balloon-note transaction instead of a traditional transaction. 
He points to testimony by a "rookie" loan officer who (1) denied that she made the
loan, but whose initials are "all over the contract agreements" and (2) claimed she
discussed the balloon loan with Hayes. Hayes also points to testimony by the bank
president who (1) stated he did Hayes's loan and discussed the balloon payment
with Hayes; (2) "lied" about whether the loan was a ten-year loan or a seven-year
loan; and (3) denied performing amortizations "personally," but later stated that he
used his calculator to perform the calculations. (2) 

 We decline to invade the trial court's credibility determinations or the
weight, if any, that the trial court chose to give testimony by the bank's witnesses. 
See id. Having nonetheless reviewed all the evidence from the trial in accordance
with Hayes's challenge, we cannot say that the evidence so greatly preponderates
against the implied findings by the trial court in favor of the bank that the judgment
in favor of the bank is clearly wrong and manifestly unjust. See Cain, 709 S.W.2d
at 176; In re King's Estate, 244 S.W.2d at 661. 

 We overrule Hayes's issue (f).

Claimed Discovery Error

 In issue (d), Hayes contends that he was entitled to a mistrial because the
bank did not disclose its witnesses or material evidence to him in response to his
request. It is undisputed that Hayes did not request discovery of the bank until less
than a week before the May 8, 2000 trial. Requests for disclosure must be made
"no later than 30 days before the end of any applicable discovery period." Tex. R.
Civ. P. 194.1; accord Tex. R. Civ. P. 194.3 (stating that party responding to
discovery request generally has 30 days to serve a written response on the
requesting party). Aggrieved parties in a discovery dispute must obtain a ruling
before trial begins in order to preserve error. Remington Arms Co. v. Caldwell, 850
S.W.2d 167, 170 (Tex. 1993). Having failed to obtain a ruling on his discovery
request before trial, Hayes waived any error. See Tex. R. App. P. 33.1.

 We overrule Hayes's issue (d).


Claimed Errors in Conducting Trial

 In issues (e) and (g), Hayes contends that the trial court erred by (1) denying
his request for a jury trial, (2) not allowing him to question all the witnesses he had
subpoenaed, and (3) not instructing the witnesses "not to discuss the case among
themselves." Rulings related to conducting the trial are within the trial court's
broad discretion and will not be set aside on appeal unless the trial court manifestly
abused its discretion. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 239 (Tex. 2001). 
A trial court abuses its discretion when it reaches a decision that is so arbitrary and
unreasonable that it amounts to a clear and prejudicial error of law, or when it
clearly fails to correctly analyze or apply the law. In re Ford Motor Co., 165
S.W.3d 315, 317 (Tex. 2005) (citing Walker v. Packer, 827 S.W.2d 833, 839-40
(Tex. 1992)). Because a trial court has no discretion in determining what the law
is, which law governs, or how to apply the law, we review these types of
discretionary rulings de novo. See In re D. Wilson Constr. Co., 196 S.W.3d 774,
781 (Tex. 2006) (citing Walker, 827 S.W.2d at 840). But when we review a ruling
that results from the trial court's having resolved underlying facts, we must defer
to the trial court's factual resolutions, and any credibility determinations that may
have affected those resolutions, and we may not substitute our judgment for the
trial court's judgment in those matters. See Walker, 827 S.W.2d at 839-40; Holley
v. Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ
denied). 
A. Denial of Jury Trial

 Hayes contends that the trial court erred by denying his request for a jury
trial. Though the Texas Constitution guarantees a right to trial by jury, Tex.
Const. art. I, § 15, the Constitution further provides that "[N]o jury shall be
empaneled in any civil case unless demanded by a party to the case, and a jury fee
be paid by the party demanding a jury, for such sum, and with such exceptions as
may be prescribed by the Legislature." Tex. Const. art. V, § 10. We review
denial of a demand for a jury trial for abuse of discretion. Monroe v. Alternatives
in Motion, No. 01-05-01187-CV, 01-05-01188-CV, 2007 WL 529295, at *10 (Tex.
App.--Houston [1st Dist.] Feb. 22, 2007, no pet. h.) (citing Mercedes-Benz Credit
Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996)). 

 A party who seeks a jury trial must request a jury and pay the jury fee at "a
reasonable time before the date set for trial of the cause on the non-jury docket, but
not less than thirty days in advance." Tex. R. Civ. P. 216. A trial court does not
abuse its discretion by denying a trial by jury when there is no timely request or
payment of a jury fee. Huddle v. Huddle, 696 S.W.2d 895, 895 (Tex. 1985);
Martin v. Black, 909 S.W.2d 192, 197 (Tex. App.--Houston [14th Dist.] 1995,
writ denied). An untimely jury demand should be granted, however, if granting the
request will not (1) interfere with the court's docket, (2) delay the trial, or (3)
injure the opposing party. See Gen. Motors Corp. v. Gayle, 951 S.W.2d 469, 476
(Tex. 1997); Barkhausen v. Craycom, Inc., 178 S.W.3d 413, 418 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied).

 Hayes stated on the record in this case that he believed he requested a jury
trial and paid the jury fee when he filed suit, but he could not produce a receipt
showing that he had paid the jury fee. Counsel for the bank stated that he never
received a written request for jury trial. After learning from the court coordinator
that no jury fee had been paid, Hayes paid the fee on the Friday before the Monday
that trial began. 

 When the trial court ruled that no jury would be empaneled because Hayes
did not timely pay the fee, Hayes did not attempt to demonstrate that granting the
request for jury trial would not interfere with the court's docket, delay the trial, or
injure the opposing party. The trial court, however, specified that, "it would
certainly interrupt the Court's docket to try and put this case now on a jury
docket." Accordingly, we hold that the trial court did not abuse its discretion by
denying Hayes's request for a jury trial. See Gen. Motors Corp., 951 S.W.2d at
476; Barkhausen, 178 S.W.3d at 418. 

 We overrule the portion of Hayes's issue (e) that challenges denial of a jury
trial.


. Questioning Subpoenaed Witnesses

 In another portion of issue (e), Hayes contends that the trial court erred by
not permitting Hayes to question all the witnesses he had subpoenaed. We
construe this complaint as contending that the trial court erred by not permitting
one of Hayes's two subpoenaed witnesses to testify. Admission or exclusion of
evidence is generally a matter within the trial court's discretion. In re J.P.B., 180
S.W.3d 570, 575 (Tex. 2005) (citing State v. Bristol Hotel Asset Co., 65 S.W.3d
638, 647 (Tex. 2001)). The record of this case establishes that Hayes personally
excused the witness and thus has no complaint. The following transpired at the
end of the first day of trial: 

 THE COURT: Now, sometime back you told me that you were getting
your financial advice from other people and I don't
remember if these are the two people or not, but I
explained to you that the Court doesn't take lay witnesses
to [tell] me what the law is. It would appear to me that
more than likely you have these two witnesses on the
hook here under subpoena because you want them to tell
me what they think the law is or maybe what they told
you the law is or something like that. If you want to ask
them any questions like that, they will not be allowed to
answer. Are you sure you want these two witnesses back
in the morning?


 HAYES: I would like to have Mr. Eugene Williams back on
tomorrow morning. Mr. Barrick, I can excuse him. 


(Emphasis added)] 

 Because it is apparent that Hayes chose to abandon his request to have
Barrick testify, we hold that Hayes waived his complaint. 

 We overrule the remaining portion of Hayes's issue (e).

C. Invoking "The Rule"

 In issue (g), Hayes argues that the trial court did not properly place the
witnesses under the exclusionary rule by instructing them "not to discuss the case
among themselves." See Tex. R. Evid. 614; Tex. R. Civ. P. 267. Once "the rule"
is invoked, the trial court must exclude witnesses from the courtroom and
admonish witnesses "not to converse with each other or with any other person
about the case other than the attorneys in the case, except by permission of the
court." Drilex Sys., Inc. v. Flores, 1 S.W.3d 112, 117 (Tex. 1999). 

 Hayes must demonstrate on appeal that the trial court erred, and that a
violation of the rule occurred. See id. Yet, Hayes offers no record citations to
support his contention, and the record does not disclose that he brought any
violation of the rule to the trial court's attention or asked that a witness be excluded
or held in contempt for violating the rule. See id. To the contrary, the record
establishes that the court conformed to the rule. The witnesses were sworn and
instructed to wait in the attorney-ready rooms, and the trial court instructed them to
not discuss the case while waiting to be called. Hayes offered no evidence that a
violation occurred, and we find none. Accordingly, Hayes has not established that
the trial court abused its discretion. 

 We overrule Hayes's issue (g). 

Conclusion

 We affirm the judgment of the trial court.


 




 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland. 
1. Hayes's pleadings also allege that he was "extorted, strong armed, and coerced" into
a second loan agreement by which the bank advanced him funds to repay the balance
due on the original loan, but Hayes does not challenge the trial court's having rejected
those claims. 
2. Hayes contends that the witnesses were motivated to lie to "cover up" having
negotiated a balloon-payment loan to Hayes, when he did not intend that type of
transaction, but Hayes offers no citations from the record that substantiate his claim.